# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LISA R. JOHNSON,          )
                                     )
                Plaintiff,        )
                                     )
v.                                 )     Case No. CIV-15-1009-HE
                                   )
CAROLYN W. COLVIN, Acting    )
Commissioner of the Social Security  )
Administration,               )
                                   )
                Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff, Lisa R. Johnson, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income (SSI). This matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

On June 29, 2012, Plaintiff filed an application for DIB and on July 6, 2012, she filed an application for SSI. AR 231, 241. The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 111-12, 135-36, 163-71, 176-81. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated February 13, 2014. AR 14-29. The Appeals Council denied Plaintiff's request for review. AR 1-5. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of this final agency decision.

**II.    The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§ 404.1520, 416.920.  The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2011 and through the date of his decision.  AR 16-17.[1]

At step two, the ALJ determined that Plaintiff suffers from disorders of the gastrointestinal system, an affective disorder, an anxiety disorder, borderline intellectual functioning, alcohol abuse, and drug abuse and that "[w]hen combined, these impairments constitute a 'severe impairment'" for purposes of satisfying step two.  AR 17.  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20-23.  Specifically, the ALJ considered Listings 5.02, 12.04, 12.05, 12.06 and 12.09.  AR 21.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she could perform medium work subject to limitations due to her physical and mental impairments.  AR 23.[2]  Under the Commissioner's "expedited process," the ALJ did not address

---

[1] The ALJ found Plaintiff met the insured statutes requirements of the Act through June 30, 2014.  AR 16.

[2] *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (setting forth requirements for medium work).

Plaintiff's past relevant work at step four but proceeded directly to step five. AR 27.[3] Relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could perform other unskilled work including floor waxer, laundry laborer and multiple other occupations, and that jobs for these occupations exist in significant numbers in the regional and national economies. AR 28. The ALJ further found that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT). *Id*. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 28-29.

### III.  Issues Presented for Judicial Review

Plaintiff raises five issues for judicial review: (1) the ALJ denied Plaintiff's constitutional due process rights by failing to make a full and fair inquiry; (2) the ALJ failed to find Plaintiff's impairments met or medically equaled a listed impairment; (3) the ALJ did not properly weigh the medical evidence; (4) the ALJ erred at steps two, three, four and five of the sequential evaluation process by failing to consider all impairments properly at all steps; and (5) the ALJ failed to perform a proper credibility analysis.

For the reasons set forth below, a remand is recommended because the ALJ's step-three analysis is legally flawed and not supported by substantial evidence. Furthermore, on remand, the ALJ should properly consider the medical opinion of the consultative psychologist, Reda

---

[3] It appears the ALJ impermissibly enlisted the "expedited process" to make his disability determination. *See* AR 27 and n. 1. The governing regulations allow the ALJ to bypass step four of the sequential evaluation process but only when there is *insufficient evidence* of a claimant's work history. *See* 20 C.F.R. §§ 404.1520(h), 416.920(h). The ALJ made no finding that evidence of claimant's work history is insufficient and the record belies the same. Plaintiff does not raise any issue challenging the ALJ's use of the expedited process. However, as discussed infra, the Court recommends this matter be remanded. Findings regarding the mental demands of Plaintiff's past relevant work may be relevant on remand. Therefore, the Court points out the matter to the extent such findings may be necessary to the ultimate disability determination.

Rasco, Psy. D., and address the weight given to that opinion. Because the ALJ's treatment of these issues on remand may affect his credibility analysis, the Court does not reach the merits of that claim. Plaintiff's remaining claims of error lack merit and should be denied.

## IV.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.  Analysis

### A.  Due Process Rights

Plaintiff first claims the ALJ violated her due process rights by "failing to make a full and fair inquiry." *See* Pl.'s Br. [Doc. No. 11] at p. 3. Plaintiff relies on the fact that she appeared pro se at the administrative hearing, did not receive a copy of the evidence prior to the hearing, did

not know how to review the electronic copy of the exhibits the ALJ provided to her, and was given a period of only ten days to notify the ALJ of any missing evidence or object to any exhibits. She contends that under these circumstances the ALJ had a heightened duty to investigate all issues presented and develop the record. Plaintiff specifically references medical records of her admission to Elkview General Hospital in January 2012. *See id.* at p. 4. Plaintiff contends this evidence was later submitted to the Appeals Council, but the ALJ "should have ensured it was in the file when he rendered his decision." *Id.* Plaintiff does not articulate the significance of this evidence.

Plaintiff also specifically references the ALJ's failure to obtain school records and contends the ALJ should have asked Plaintiff where she attended school and/or obtained her GED so that he could have requested those records. Plaintiff states this evidence is significant to the ALJ's consideration of the listings.

In addition, Plaintiff references the ALJ's failure to ask questions regarding the date of a friend's death or the date of her mother's death and states that this evidence was significant for purposes of determining "when [her] deterioration began" and what had "changed or what had happened to further erode her functional abilities." *See* Pl.'s Br. at p. 5. According to Plaintiff, the ALJ should have ordered additional psychological or physical testing to determine whether she meets a listing. Plaintiff states that the ALJ did not consider Listing 12.02, Organic Mental Disorders and that the ALJ failed to investigate the presence of a "specific organic factor related to 'the *abnormal mental state* and *loss of previously acquired functional abilities*.'" *See* Pl.'s Br. at p. 5 (citations omitted). She also states that if further development of the record would have taken place, she could have met Listing 12.02 or another listing and relies, in part, on evidence of severe cognitive impairments. *See id.* at pp. 5-6.

In presenting her claim, Plaintiff conflates concepts of procedural due process and the ALJ's duty to develop the record. It is well-established that "[s]ocial security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1236 (10th Cir. 2005) (citation omitted). Thus, a claimant is entitled to notice and hearing. *Id*. Here, Plaintiff received notice and a hearing. She was provided the relevant documents and given the opportunity to postpone the hearing and obtain a representative, or waive those rights and proceed with the hearing. The ALJ thoroughly explained the hearing procedures and Plaintiff's attendant rights, after which Plaintiff chose to proceed with the hearing. AR 39-40; *see also* AR 43-51. The record fails to demonstrate Plaintiff's due process rights have been violated and this claim should be denied.

The ALJ's duty to develop the record is a separate issue. Where, as here, a claimant has little education and appears without representation, the ALJ has a heightened duty to develop the record. *See, e.g*., *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987). As discussed below, the Court finds the ALJ erred in his step-three analysis and a remand is required. Plaintiff's arguments concerning the ALJ's duty to develop the record largely center upon the step-three analysis. The Court, therefore, finds it unnecessary to address whether the ALJ failed in his duty to develop the record. It appears that Plaintiff, now represented by counsel, will likely be represented by counsel on remand and any further development of the record will be assisted by the fact of that representation.

**B.      The ALJ's Step-Three Analysis / Listing 12.05(C) – Intellectual Disability**

At step three, the ALJ considers whether a claimant's impairments meet or equal a listed impairment. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Here, the ALJ considered Listings 5.02 (Digestive System / Gastrointestinal hemorrhaging), 12.04 (Affective

Disorders), 12.05 (Intellectual disability), 12.06 (Anxiety Related Disorders) and 12.09 (Substance Addiction Disorders). AR 20-23. Plaintiff specifically challenges the ALJ's findings with respect to Listing 12.05.[4]

The ALJ found that Plaintiff did not meet Listing 12.05 which sets forth the requirements for finding a claimant presumptively disabled due to an intellectual disability.[5] The Listing contains a "capsule definition" or "diagnostic description" of intellectual disability:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05. The Listing also contains four sets of criteria describing listing-level severity. *Id*., § 12.05(A)-(D). A claimant bears the burden of satisfying both the capsule definition and one of the four severity prongs to establish that she meets the

---

[4] Plaintiff additionally challenges the ALJ's failure to address Listing 12.02 (Organic Mental Disorders). Plaintiff bases this challenge on the ALJ's failure to develop the record. Plaintiff contends that her testimony supports a "loss of functional ability" and Dr. Rasco's report demonstrates her "abnormal mental state." *See* Pl.'s Brf. at p. 5. Plaintiff claims the ALJ should have ordered an additional consultative examination for the purpose of administering additional tests such as the "Luria-Nebraska" or "Halstead-Reitan." *See id*. at p. 6. The Court finds Plaintiff's claim is based on speculation about what further development of the record might show and the record evidence Plaintiff relies upon is otherwise insufficient to require further development of the record with respect to Listing 12.02. This claim of error, raised in most perfunctory fashion, therefore, should be denied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (limiting review to claims that the claimant adequately briefed and declining to consider poorly developed subissues and arguments).

[5] The SSA previously identified the impairment addressed by Listing 12.05 as "mental retardation" but changed the designation to "intellectual disability" on August 1, 2013. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46, 499 Aug. 1, 2013). The change did not alter the Listing in any substantive way. *See id*. at 46, 501. The record includes references to mental retardation in certain medical opinions issued prior to the change in terminology. To the extent the record, or case law pre-dating the change, reference "mental retardation", that term is used interchangeably with "intellectual disability" in the Court's discussion of Listing 12.05.

listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). At issue here are the requirements in paragraph 12.05(C): "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* [6]

The ALJ did not address the severity prong, apparently deeming any such findings unnecessary based on his conclusion that Plaintiff's mental impairment did not satisfy the capsule definition.[7] Plaintiff contends the record establishes that the severity prong is satisfied and the Commissioner makes no attempt to refute Plaintiff's contention. Indeed, the record includes a qualifying IQ score of 61 based upon the consultative psychological examination and testing conducted by Dr. Rasco, *see* AR 393, and the ALJ made no finding to implicate the invalidity of that score. Moreover, at step two the ALJ found that Plaintiff has several impairments that are severe and that finding satisfies the requirement that Plaintiff establish a physical or other mental impairment causing an additional and significant work-related limitation of function. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997); *Peck v. Barnhart*, 214 F. App'x 730, 734 (10th Cir. 2006).

Thus, the dispositive issue is whether the ALJ's finding that Plaintiff's mental impairment did not meet the capsule definition of Listing 12.05(C) can be affirmed. Plaintiff claims that she meets the requirements of the capsule definition, primarily relying upon her IQ

---

[6] Plaintiff also challenges the ALJ's step-three finding as to paragraph D of the severity prong of Listing 12.05. The Court finds a remand is warranted as to paragraph C of Listing 12.05. Further, express consideration of Dr. Rasco's opinion must be undertaken on remand. Analysis of the paragraph D criteria may be impacted by these matters on remand. Therefore, the Court declines to separately address any error related to Listing 12.05(D).

[7] The ALJ cited "listing 12.05, paragraph A" in his decision, but then quoted the capsule definition and not any aspect of the paragraph A severity prong. AR 23. Thus, the ALJ's citation appears to be a typographical error.

score, which she contends gives rise to a presumption of onset before the age of 22. *See* Pl.'s Brf. at p. 7. Plaintiff further claims that school records, GED records, or further inquiry by the ALJ would also establish that she satisfies the capsule definition. In response, the Commissioner contends the ALJ properly found Plaintiff did not meet the capsule definition based on consideration of evidence regarding Plaintiff's education and work history. *See* Def.'s Brf. [Doc. No. 17] at p. 10.

Contrary to the Commissioner's contention and for the reasons that follow, the ALJ's finding that Plaintiff's mental impairment does not meet the capsule definition of Listing 12.05 is legally incorrect and not supported by substantial evidence. The ALJ's reliance on Plaintiff's education and work history, without further analysis, requires a remand.

The ALJ first cited the requirements of the capsule definition and then made the following factual findings:

- Plaintiff reported that she completed the 10th grade in 1980 and did not attend any special education classes.

- Plaintiff worked as a full-time dishwasher from January 1990 through January 1996.

- Plaintiff worked as a full-time housekeeper in a hospital from January 1996 through January 2010.

- Plaintiff worked for the Kiowa County Hospital Authority in 2010 and earned wages totaling $13,509.65 that year.

AR 23. Based on these factual findings, the ALJ concluded as follows:

> [T]he claimant did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence must demonstrate or support onset of the impairment before age 22. Therefore, the claimant cannot meet any of the criteria for 12.05, *other than borderline intellectual functioning. There is no diagnosis of an intellectual disability under 12.05* and there are no deficits of adaptive functioning before age 22.

*Id.* (emphasis added).

The ALJ did not explain why the diagnosis of borderline intellectual functioning did not satisfy the capsule definition, i.e., the ALJ did not address why he concluded that "[t]here is no diagnosis of an intellectual disability under 12.05" notwithstanding Plaintiff's diagnosis of borderline intellectual functioning. This constitutes error.

Listing 12.05(C) does not adhere to any particular definition for mental retardation. Consequently, as several courts have concluded, a diagnosis of borderline intellectual functioning does not necessarily preclude a finding of disability under Listing 12.05(C). *See, e.g., Turnage v. Astrue*, No. CIV-11-4071-JAR , 2012 WL 405590 at **6-7 (D. Kan. Feb. 8, 2012) (unpublished op.) (noting that the SSA "opted for a more flexible standard" for assessing mental retardation and, therefore, a formal diagnosis of mental retardation is not required nor does a diagnosis of borderline intellectual functioning preclude "a determination of disability under listing 12.05 for mental retardation") (citations omitted); *see also McDonald v. Colvin*, No. CIV-12-883-HE, (W.D. Okla.) (report and recommendation of Mitchell, J.), *adopted*, 2013 WL 6633956 at *5 (W.D. Okla. Dec. 17, 2013) (rejecting Commissioner's argument that claimant's diagnosis of borderline intellectual functioning precludes a finding of mental retardation for purposes of Listing 12.05(C) and noting that the Commissioner "fail[ed] . . . to support this seemingly case-dispositive legal claim with any legal authority."). The ALJ's conclusory finding that "other than borderline intellectual finding" Plaintiff has no diagnosis of an intellectual disability, is internally at odds.

Additionally, the ALJ did not explain how he determined that Plaintiff lacked deficits of adaptive functioning before age 22. There is no evidence to suggest a change in Plaintiff's IQ after she turned 22. As Plaintiff correctly points out, her verbal IQ score is some evidence of

intellectual disability prior to age 22. *See* Pl.'s Brief at p. 7. Plaintiff cites cases from the Fourth, Fifth, Seventh, Eighth and Eleventh Circuits for the proposition that an individual's IQ remains relatively constant and an IQ score after the age of twenty-two is evidence of intellectual functioning prior to that age. *See id.* (collecting cases).[8] And, as Plaintiff further points out, although the Tenth Circuit has not expressly addressed the issue, it has noted other circuits' liberal construction of the early manifestation requirement such that a claimant "is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two so long as there was no evidence that claimant's IQ had changed." *McKown v. Shalala*, No. 93-7000, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993) (unpublished op.). Thus, absent evidence that the ALJ relied on a change in Plaintiff's intellectual functioning, the presumption that Plaintiff's IQ remained constant has not been rebutted and any implicit finding by the ALJ that claimant's intellectual disability did not manifest prior to age 22 is not supported by substantial evidence. *Cf. Bradley v. Astrue*, No. CIV-12-1138-JAR, 2012 WL 5878612 at *3 (D. Kan. Nov. 21, 2012) (unpublished op.) ("The Court accepts as the rule that a claimant's later IQ test in the requisite range, absent evidence of a change in IQ, allows the Court to infer that the claimant's IQ was within the requisite range before the age of 22.").

The ALJ's conclusory reliance on Plaintiff's education and work history does not change this result. The SSA has not adopted a standard to measure what constitutes "deficits of adaptive functioning" under the capsule definition of Listing 12.05(C). *Barnes v. Barnhart*, 116 F. App'x 934, 942 (10th Cir. 2004). Instead, the SSA allows use of the measurement methods authorized by four major professional organizations dealing with mental retardation. *See* Technical

---

[8] Plaintiff cites the following cases: *Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir. 2005); *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986); and *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985).

Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022 (April 24, 2002).  One of those definitions, for example, is that authorized by the *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., text revision, 2000 (DSM-IV-TR) which provides that to have deficits in adaptive functioning, an individual must have significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety.  *See id.*

The ALJ's decision, however, is silent with respect to what method he used to measure Plaintiff's deficits of adaptive functioning.  The ALJ did not comply with the requirement that he identify and apply an appropriate method of measurement.  *Barnes*, 116 F. App'x at 940, 942-43.  Thus, the ALJ's decision does not permit meaningful review.  *See id.*

In *Barnes*, the ALJ had found that the claimant's daily activities, social skills and educational history demonstrated that the claimant's low IQ score and physical impairments were not so disabling as to satisfy Listing 12.05(C).  *Id.* at 939.  The Tenth Circuit found "both factual and legal problems" with the Commissioner's contention that the claimant had not shown the requisite deficits in adaptive functioning.  *Id.* at 940.  The court concluded that factually the record did not support "the ALJ's conclusion under the ad hoc functional approach he applied."  *Id.*  And, as to the ALJ's legal error, the court concluded that the ALJ failed to choose and apply one of the endorsed methods of measurement for assessing deficits in adaptive functioning as directed by the SSA.  *Id.*

As pertinent here, the court made the following observations about the claimant's educational history: the claimant was "basically a failure at school"; she "finished the tenth grade and then quit"; she "never got a GED . . . and it is not clear that she is eligible to take that test,

even if she wanted to"; and "[t]he record suggests she dropped out of school because she was pregnant." *Id*. at 941.

In this case, Plaintiff testified that when she was in the 10th grade her school principal told her she was failing all of her classes and if she did not bring her grades up she would be placed in special education classes. AR 71-72.[9] Moreover, Plaintiff testified that she attempted to complete her GED but could not pass because she could not complete the mathematic part and could not write an essay. AR 69. This testimony is consistent with history Plaintiff reported to the consultative psychologist, Dr. Rasco. AR 390.

The ALJ ignored this evidence when addressing Listing 12.05(C). AR 23. As in *Barnes*, the ALJ's factual finding regarding her educational history which served as the factual predicate for his conclusion that she did not have deficits in adaptive functioning is not supported by substantial evidence. Significantly, the ALJ failed to explain why Plaintiff's completion of the 10th grade, in light of the additional evidence that she was recommended for special education classes and could not complete her GED, supports a finding that she did not have the requisite deficits in adaptive functioning to support the Listing 12.05(C) criteria.

Second, Plaintiff's work history is an insufficient factual basis upon which to rest the ALJ's finding regarding deficits of adaptive functioning. Listing 12.05(C) "implies that . . . an individual [with mild mental retardation] will be able to work unless he has, or until he develops, a severe physical or additional mental impairment." *Muntzert v. Astrue*, 502 F. Supp.2d 1148, 1158 (D. Kan. 2007). *See also Hinkle*, 132 F.3d at 1352 (recognizing that the "purpose of § 12.05(C) is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work") (citation omitted)). A "history of continuous employment in the past,"

---

[9] Plaintiff testified that she later quit school because she became pregnant. AR 75.

therefore, "is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments." *Muntzert*, 502 F. Supp.2d at 1158. (collecting cases concluding that an individual who "is able to work and has attended schooling beyond high school" is not inconsistent with mild mental retardation). By focusing on Plaintiff's work history, without further explanation, the ALJ failed to account for the implicit purpose of Listing 12.05(C).

In this regard, the Court further notes that the record appears to contain inconsistencies about Plaintiff's work history. The ALJ relied upon the form Disability Report – Adult, completed by someone other than Plaintiff, to support his factual findings. AR 282-289. But the form Work History Report, completed by Plaintiff, suggests a more sporadic and diverse work history, *see* AR 290, as does the summary of Plaintiff's earnings history. AR 260-65.[10]

Finally, the ALJ failed to address other evidence regarding Plaintiff's social functioning and other limitations from her mental impairments, including pertinent findings made by Dr. Rasco. Notably, Dr. Rasco opined that Plaintiff "appeared to put forth her best effort" during the exam. AR 389. Dr. Rasco noted that Plaintiff "experiences paranoid beliefs, occasional suicidal ideation, the desire to hurt others when provoked, and sees and hears things others do not." AR 393.[11] She opined that Plaintiff "isolates herself" and suffers "social withdrawal." AR 391, 392.

---

[10] The ALJ did not ask Plaintiff to identify her past relevant work at the hearing nor did the ALJ elicit any VE testimony about Plaintiff's past relevant work. As noted, because the ALJ applied the "expedited process," he did not address Plaintiff's past relevant work at step four.

[11] With respect to the latter, Plaintiff made multiple references to her deceased friend, Cathy. During the examination, Plaintiff spoke to Cathy as if she were present and consulted her on the answers to various questions administered during the testing. AR 389, 390, 392.

Dr. Rasco assigned Plaintiff a GAF of 40.[12]  She further stated that Plaintiff's "prognosis is poor

and depends on her ability to obtain and manage medications and address her presenting mood

symptoms."  *Id*.  She determined that Plaintiff could not manage funds "due to her current level

of functioning and psychosis."  *Id*.  The ALJ included a summary of Dr. Rasco's examination of

Plaintiff in the context of his step-two determination.  AR 17, 18-19.[13]  But the ALJ did not

address any of this evidence at step three when concluding that Plaintiff did not have the

requisite deficits in adaptive functioning.

Although Defendant contends that "Dr. Rasco herself recognized that Plaintiff's adaptive

functioning was not severe enough to meet the Listing," *see* Defendant's Br. at p. 11, Defendant

takes that finding out of context and, like the ALJ, fails to explain why the diagnosis of

borderline intellectual functioning did not satisfy the capsule definition.[14]  Moreover, because the

ALJ did not discuss Dr. Rasco's finding in the context of his discussion of Listing 12.05(C),

Defendant impermissibly offers a post-hoc rationale to support the ALJ's finding.  *See Haga v.*

---

[12]  A GAF score between 31 and 40 represents "[s]ome impairment in reality testing or
communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in
several areas, such as work or school, family relations, judgment, thinking, or mood (e.g.,
depressed man avoids friends, neglects family, and is unable to work; child frequently beats up
younger children, is defiant at home, and is failing at school)." DSM-IV, *supra*, at 34.  A GAF
score between 41 and 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job)." *Id*.

[13]  The ALJ only summarized the findings by Dr. Rasco.  He never recited any conclusions drawn
from those findings or identified the weight he was giving to her findings.

[14]  Dr. Rasco did not offer any opinion as to whether Plaintiff's mental impairments satisfy
Listing 12.05(C).  Instead, Dr. Rasco provided the following diagnosis: ""While Mrs. Johnson's
IQ is suggestive of cognitive impairment congruent with Mental Retardation, her adaptive skills
support a diagnosis of Borderline Intellectual Functioning." AR 393.  Moreover, Dr. Rasco
included in her report a brief description of Plaintiff's daily activities and her past work, *see* AR
51-52, but Dr. Rasco did not state whether these factors, or other considerations, supported her
conclusion regarding the level of Plaintiff's adaptive skills.

*Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (noting that where ALJ did not provide explanations offered by the Commissioner to support the ALJ's findings, the court was prohibited from creating or adopting "post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

For all the reasons set forth, the ALJ's step-three analysis concluding that Plaintiff does not meet or equal Listing 12.05(C) is legally flawed and not supported by substantial evidence. A remand, therefore, is required.

### C.     The ALJ's Weighing of the Medical Evidence

As discussed in relation to Plaintiff's challenge to the ALJ's step-three analysis, the ALJ summarized Dr. Rasco's findings but he never stated the weight given to those findings or otherwise addressed those findings in his analysis.  The ALJ's failure to do so constitutes error. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Because Dr. Rasco "conducted an in-person mental status examination of [Plaintiff], [h]er opinion is . . . considered an 'examining medical-source opinion.'"  *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (*citing Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).  "Such opinions are 'given particular consideration' in that they are 'presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record.'"  *Id*. (*quoting Chapo*, 682 F.3d at 1291.).

The Court finds unavailing the Commissioner's argument that any error is deemed harmless because Dr. Rasco's findings were addressed by the reviewing stage agency consultants and the ALJ assigned great weight to their medical opinions.  *See* Def.'s Brf. at p. 10; *see also* AR 26.  As noted, Dr. Rasco's opinion is presumptively entitled to more weight.  Significantly, neither of the non-examining state agency consultants included in their findings Dr. Rasco's additional diagnoses of bipolar disorder (severe with psychotic features) and post-traumatic

stress disorder (PTSD).[15]  Nor did the state agency consultants consider Dr. Rasco's opinion that Plaintiff's "prognosis is poor and depends on her ability to obtain and manage medications and address her presenting mood symptoms."  AR 393.  Dr. Rasco also noted that Plaintiff "has difficulty completing tasks in a timely manner due to psychiatric symptoms and physical health."  AR 390.  Contrary to Dr. Rasco's finding, the non-examining state agency consultants opined that Plaintiff "is capable of simple and routine work tasks *for a sustained period of time and at an appropriate pace . . . .*"  AR 146, 158 (emphasis added).

The Court has determined that the ALJ's step-three error requires further analysis of Dr. Rasco's opinion on remand.  The Court further finds that on remand the ALJ should properly weigh and address Dr. Rasco's findings, including any inconsistencies between her findings and the conclusions of the non-examining state agency medical consultants.

**D.     The ALJ's Consideration of All Plaintiff's Medically Determinable Impairments**

Plaintiff next claims the ALJ erred at steps two, three, four and five "by failing to consider all impairments properly at all steps."  Specifically, Plaintiff claims that at step two, the ALJ failed to find Plaintiff's severe impairments included bipolar disorder ( severe with psychotic features) and PTSD.  As addressed, these impairments were diagnosed by the consultative psychologist, Dr. Rasco.  Plaintiff contends the ALJ's failure to include these impairments as severe impairments at step two "necessarily flawed his determinations at steps three, four, and five."  *See* Pl.'s Brf. at p. 12.

---

[15] The non-examining state agency consultants noted that *Plaintiff reported* previous diagnoses of depression and bipolar disorder, but did not address the fact that *Dr. Rasco diagnosed* Plaintiff with this disorder.  AR 143, 154.

A failure to include an impairment at step two is harmless if the ALJ finds at least one severe impairment, proceeds past step two and then takes into effect the combined limiting effects of all medically determinable impairments, severe or not, at the remaining steps. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found Plaintiff suffered from other severe impairments and proceeded past step two.

As to any resulting error at step three, Plaintiff states in wholly conclusory fashion that the ALJ "should have found Claimant meets or equals at least one Listing at step three, *supra*." *See* Pl.'s Brf. at p. 12. She does not further develop this argument or attempt to demonstrate how the additional severe impairments of bipolar disorder or PTSD satisfy a listing. In any event, the Court has found error at step three requiring a remand. The ALJ should consider these additional impairments on remand as they may impact his step-three analysis.

With respect to step four, Plaintiff does not point to any particular functional impairment related to these diagnoses or identify what additional limitations should have been included in the RFC. [16] Nonetheless, because the ALJ must specifically address Dr. Rasco's findings on remand, the ALJ is reminded that he must consider the combined effect of all medically determinable impairments. Because the non-examining state agency consultants did not consider Plaintiff's additional impairments, it may be necessary for the ALJ to obtain additional development of the record with respect to Plaintiff's mental residual functional capacity. Moreover, the ALJ is reminded that any limitations borne about by the evidentiary record must be included in the RFC determination.

---

[16] As discussed supra, *see* n. 3, because the ALJ did not address Plaintiff's past relevant work, the only step-four error Plaintiff's claim relates to is the ALJ's RFC determination.

As to the ALJ's step-five finding, Plaintiff argues that the jobs identified at step five are necessarily precluded by Dr. Rasco's finding, based on IQ testing, that Plaintiff is "in the bottom one percent of the population with regard to 'overall thinking,' 'acquired knowledge,' 'verbal reasoning,' 'comprehension of verbal information,' spatial processing,' and 'motor integration.'" *See* Plaintiff's Brief at 13 (*citing* AR 391). Plaintiff cites no legal authority to support her claim. Instead, she relies on the DOT job descriptions for the jobs identified by the ALJ at step five. Plaintiff contends these jobs are available to the lowest third of the population, *exclusive of* the bottom ten percent of the population and therefore, her IQ scores establish that she cannot perform these jobs. *See* Pl.'s Brf at p. 13 (*citing* DOT #381.687-034, #361.687-018, #389.687-014, #529.687-186, #920.687-018, #731.687-010, #715.687-086, #713.687-025 and #690.686-066).[17]

The Tenth Circuit has not addressed this issue. But other district courts, including those within the Tenth Circuit, have rejected the argument finding a lack of correlation between IQ test scores such as those produced by the WAIS-IV exam (the IQ exam given to Plaintiff) and job descriptions in the DOT. *See Wilson v. Astrue*, 834 F. Supp.2d 1295, 1303 (N.D. Okla. 2011) (collecting cases); *see also Perez-Leeds v. Colvin*, No. CV-13-0185-KBM, 2014 WL 12284043 at *8 (D.N.M. March 27, 2014) (unpublished op.).

The reasoning of these cases is persuasive and the Court agrees that "it is not accurate to correlate borderline intellectual functioning with those aspects of the DOT" relied upon by Plaintiff. *Wilson*, 834 F. Supp.2d at 1303. Based on this authority, coupled with Plaintiff's failure to cite any contrary authority, this claim should be denied.

---

[17] The DOT includes within its job descriptions matters such as "General Learning Ability," "Verbal Aptitude," "Numerical Aptitude," and "Spatial Aptitude." *See, e.g.*, Floor Waxer, DOT #381.687-034.

### E.    The ALJ's Credibility Analysis

As her final claim of error, Plaintiff contends the ALJ failed to conduct a proper credibility analysis.  According to Plaintiff, the ALJ relied on improper factors to discount her credibility including the fact that she has no treating physician and that she has "bad judgment." Plaintiff contends the ALJ failed to inquire as to Plaintiff's reasons for not having a treating physician (such as a lack of insurance or financial resources) and failed to consider that her mental impairments are the cause of her purported "bad judgment."  Plaintiff claims the ALJ impermissibly engaged in "picking and choosing" only evidence to support his disability determination while disregarding evidence favorable to her.  *See* Pl.'s Brf. at p. 14.

As set forth above, a remand is required.  On remand, the ALJ must re-visit his step-three analysis and expressly set forth the weight given to the findings of Dr. Rasco.  The ALJ's treatment of these issues on remand may affect his credibility analysis.  Accordingly, the Court does not reach the merits of this claim.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed with the Clerk of the District Court by December 2, 2016.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 18th day of November, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE